IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| RAYMOND C. YOUNG, | ) | CIVIL NO. 08-00171 JMS/KSC |
| | ) | |
| Plaintiff, | ) | ORDER GRANTING IN PART AND |
| | ) | DENYING IN PART DEFENDANTS' |
| vs. | ) | MOTION TO DISMISS |
| | ) | |
| GEICO INDEMNITY COMPANY; GEICO GENERAL INSURANCE COMPANY; GEICO CASUALTY COMPANY; GOVERNMENT EMPLOYEES INSURANCE COMPANY; BERKSHIRE HATHAWAY INC.; OLZA M. "TONY" NICELY; AND WARREN E. BUFFET, | ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS

### I. INTRODUCTION

Plaintiff Raymond C. Young's ("Plaintiff") Complaint alleges claims against Defendants GEICO Indemnity Co. ("GEICO Indemnity"), GEICO Casualty Co. ("GEICO Casualty"), GEICO General Insurance Co., Government Employees Insurance Co., Berkshire Hathaway Inc., Olza M. "Tony" Nicely, and Warren E. Buffet (collectively, "Defendants"), for violation of 42 U.S.C. § 1981 and state law claims stemming from GEICO Indemnity's decision not to renew

Plaintiff's automobile insurance policy for himself and his son, and GEICO Casualty's offer for a new policy at a much higher rate. Currently before the court is Defendants' Motion to Dismiss. Based on the following, the court GRANTS in part and DENIES in part Defendants' Motion to Dismiss.

## II. BACKGROUND

### A.   Factual Background

#### *1.   Allegations in the Complaint*

As alleged in the Complaint, on November 21, 2007, Plaintiff called GEICO to apply for an automobile insurance policy for himself and his 20 year old son David, for two cars. Compl. ¶ 8. Plaintiff was previously insured by AIG, who had informed him that it would not renew his policy due to David's prior accidents. *Id.* Over the phone, Plaintiff provided a GEICO employee information regarding David's traffic violations, and was told that the premium would be $1,664.10 for six months, to be paid in two installments. *Id.* The GEICO employee further agreed to reduce the second payment by 3%. *Id.* Plaintiff paid $836.05 by credit card over the phone. *Id.* ¶ 11.

A few days later, Plaintiff received his insurance contract, policy number 4115-11-67-68 (the "Policy"), effective November 24, 2007 through May

24, 2008. *Id.* ¶ 12; Compl. Ex. P-2 (attached to Complaint). The Policy included the following explanation of the Hawaii Rating Plan:

> Under our rating plan, drivers not receiving points qualify for our lowest applicable premium rates. Higher rates are charged to drivers based on the number of points accumulated from both accidents and convictions for traffic violations. *Points are assigned when you or any operator of your vehicle are involved in negligent accidents and/or are convicted of moving traffic violations. . . .*
> The points assigned are accumulated during the "Experience Period." For new policies, this period is the three (3) years immediately preceding the policy effective date. For renewal policies, this period is the 34 months ending 60 days prior to the effective date of your renewal policy.

Compl. Ex. P-2 (emphasis in original); *see also* Compl. ¶ 14.[1] The Complaint asserts that the Plan implies a long contractual relationship because policy holders must stay with GEICO for at least three years to qualify for the lowest applicable premium rates. Compl. ¶ 14. Because Plaintiff had disclosed David's driving history, he believed that his premium should not be increased unless something occurred during the "Experience Period." *Id.* ¶ 15.

The Policy also included a "Fair Credit Reporting Act Notice," which notified Plaintiff that:

---

[1] The Complaint misquotes the text by stating that "[f]or new policies, this period is the three (3) years immediately proceeding the policy effective date," Compl. ¶ 14, as opposed to "preceding the policy effective date."

3

> As a result of your recent rate quote or renewal, we obtained information about you from the consumer reporting agency listed below [ChoicePoint]. That information was used in combination with other factors to determine the rate you were provided.
> . . .
> Since we may have been able to offer you a lower rate had the report been more favorable, we treat our decision as an adverse action under the Fair Credit Reporting Act. . . .

*Id.* The Complaint alleges that this Notice explained why GEICO did not offer Plaintiff a favorable rate, and told Plaintiff "that because of David's traffic violation and accident, Young had to pay a higher premium for the coverage." Compl. ¶ 13. The Complaint further alleges that GEICO's use of the reporting agency to justify why a policy holder should pay more for automobile insurance -- knowing that it would be difficult for average people to fight both an insurance company and reporting agency -- "violates the principle of fair dealing and good faith" and is against public policy. *Id.*

In February 2008, Plaintiff made his second payment of $832.05, which did not reflect the promised 3% reduction. *Id.* ¶ 16. On March 25, 2008, Plaintiff received a call from a GEICO employee, who told him that his rate would increase to over $4,000 effective May 24, 2008 due to David's prior traffic violations. *Id.* ¶ 17. Plaintiff explained that he had told GEICO about David's

driving history, and it would be unjust to increase his premium. *Id.* Plaintiff believes that this rate increase is because he is of Chinese ancestry. *Id.*

On March 26, 2008, Plaintiff received a letter from GEICO explaining insurance options for Plaintiff and David, and offering a 6-month policy with GEICO Casualty for $3,764.80. Compl. Ex. P-3. On March 27, 2008, Plaintiff received a second letter, explaining Plaintiff's insurance options, and listing David's driving history, which included speeding violations on December 27, 2004, November 29, 2006, and September 27, 2007, accidents on January 27, 2007 and June 2, 2007, disregarding a red signal on September 4, 2005, a prohibited turn at intersection on June 21, 2006, and an unsafe lane change on September 27, 2007. Compl. Ex. P-4.

Plaintiff did not understand why his rate should increase so much where David's last violation occurred two months before he applied for insurance with GEICO, and tried to get an answer. Compl. ¶ 18-19. In response to a letter Plaintiff wrote to the President of GEICO, Defendant Nicely, Plaintiff received a letter dated April 8, 2008 from Timothy Dayton, a General Manager for GEICO, which states:

> Your letter stated that you had informed us of all of David's convictions. However, when I pulled our record of your sales transaction, I found that there were several accidents listed but

> no convictions.  Two of the claims listed were shown as being at fault and the other two were shown as not at fault.  I strongly believe (but can not say for absolutely certain) that we were not told of the convictions at the time of the application.  In any event, we received copies of the conviction history in late December; at that time we should have adjusted the premium to reflect the actual record, regardless of whether it was our error or your omission.  Instead of the rate increase, you received the benefit of a rate that is much lower than it should have been (based on your actual driving records) for the current policy period.

Compl. Ex. P-5.  The Complaint alleges that this letter disregards the principle of fair dealing and good faith.  Compl. ¶ 20.

### *2.     Additional Information Provided by Defendants*

Even though Defendants styled their motion as a motion to dismiss, they provided the following additional information beyond the Complaint.

#### *a.     Terms of the Policy*

In addition to the Policy attached to the Complaint, Defendants assert that the Policy also included a document titled "Hawaii Family Automobile Insurance Policy," which explains coverage, conditions, and amendments.  Section VI, titled "General Conditions and Provisions," provides the following:

> 3.     CHANGES
> . . . The premium for each auto is based on the information we have in *your* file.  *You* agree that:

>  (a) We may adjust *your* policy premiums during the policy term if any of this information on which the premiums are based is incorrect, incomplete, or changed.
>  . . .
>  Any calculation or recalculation of your premium or changes in your coverage will be based on the rules, rates and forms on file, if required, for our use in Hawaii.
>  . . .
>  5.   POLICY PERIOD
>  Unless otherwise cancelled, this policy will expire as shown in the declarations.  However, it may be continued by our offer to renew and *your* acceptance by payment of the required renewal premium prior to the expiration date.

Defs.' Ex. B.

>  *b.   GEICO's Knowledge of David's Driving History, and Calculation of New Premium*

In late December 2007, GEICO Indemnity asserts that it received David's driving abstract, which showed that within the three years preceding the Policy's effective date (*i.e.*, three years prior to November 24, 2007), David was convicted of three traffic violations, was involved in two accidents for which he was at fault, and was cited for three more violations for which he was convicted on December 26, 2007.  Dayton Aff. ¶ 9.  David's driving history puts him in a higher risk category than originally calculated, for which GEICO Indemnity does not write policies.  *Id.* ¶¶ 10-11.  Because GEICO Casualty does write these higher risk policies, it offered Plaintiff and David a new policy.  *Id.* ¶ 12.  GEICO

Casualty asserts that the offered premium was calculated in accordance with the guidelines established in the State Approved Rating Plan. *Id.* ¶¶ 12-13; *see also id.* ¶¶ 18-28 (explaining calculation of premiums). Defendants also received confirmation from the State of Hawaii, Insurance Division, that they properly calculated from the premium. Defs.' Ex. G.

**B.     Procedural Background**

On April 17, 2008, Plaintiff filed his Complaint, alleging the claims for breach of contract (Count I), false advertising (Count II), violation of 42 U.S.C. § 1981 (Count III), unjust enrichment (Count IV), breach of their duty in good faith and fair dealing (Count V), intentional infliction of emotional distress (Count VI), and injunctive relief to prevent Defendants from increasing his insurance premium until this case is settled (Count VII).

On May 12, 2008, Defendants filed a Motion to Dismiss. On June 5, 2008, Plaintiff filed an Opposition, and Defendants filed a Reply on June 12, 2008. A hearing was held on June 23, 2008.

### III.  STANDARD OF REVIEW

**A.     Motion to Dismiss for Lack of Personal Jurisdiction**

"Where a defendant moves to dismiss a complaint for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that jurisdiction is

appropriate." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004).  "Personal jurisdiction must exist for each claim asserted against a defendant." *Action Embroidery Corp. v. Atl. Embroidery, Inc.*, 368 F.3d 1174, 1180 (9th Cir. 2004).

The plaintiff need only "'make only a prima facie showing of jurisdictional facts to withstand the motion to dismiss.'" *Menken v. Emm*, 503 F.3d 1050, 1056 (9th Cir. 2007) (*quoting Doe v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir. 2001)).  While the plaintiff cannot "simply rest on the bare allegations of its complaint . . . , uncontroverted allegations in the complaint must be taken as true," and all disputed facts must be resolved in favor of the plaintiff.  *Id.* (citation and quotation signals omitted).  If the defendant presents evidence to contradict the allegations in the complaint, the plaintiff must go beyond the pleadings and present affirmative proof of personal jurisdiction through affidavits and/or declarations.  *See AT & T Co. v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996), as supplemented by 1996 WL 490789 (9th Cir. Aug. 28, 1996).

**B.     Motion to Dismiss Pursuant to Rule 12(b)(6)**

Federal Rule of Civil Procedure 12(b)(6) permits a motion to dismiss a claim for "failure to state a claim upon which relief can be granted[.]"  When reviewing a Rule 12(b)(6) motion, a court takes the factual allegations in the

complaint as true and construes them in the light most favorable to the plaintiff. *Erickson v. Pardus*, 127 S. Ct. 2197, 2200 (2007); *Lee v. City of L.A.*, 250 F.3d 668, 679 (9th Cir. 2001). "A district court should grant a motion to dismiss if plaintiffs have not pled 'enough facts to state a claim to relief that is plausible on its face.'" *Williams ex rel. Tabiu v. Gerber Prods. Co.*, 523 F.3d 934, 938 (9th Cir. 2008) (*quoting Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007)). "'Factual allegations must be enough to raise a right to relief above the speculative level.'" *Id.* (*quoting Bell Atlantic*, 127 S. Ct. at 1965).

## IV.  DISCUSSION

### A.   Personal Jurisdiction Over Certain Defendants

Defendant argues that the court lacks personal jurisdiction over several of the named Defendants. The court agrees.

The general rule is that personal jurisdiction over an out-of-state defendant is proper if permitted by a state's long-arm statute and if the exercise of that jurisdiction does not violate federal due process. *Fireman's Fund Ins. Co. v. Nat'l Bank of Coops.*, 103 F.3d 888, 893 (9th Cir. 1996). Hawaii's long-arm statute, Hawaii Revised Statutes ("HRS") § 634-35, reaches to the full extent permitted by the Constitution. *Cowan v. First Ins. Co.*, 61 Haw. 644, 649 n.4, 608 P.2d 394, 399 n.4 (1980). Thus, this court need only decide whether federal

constitutional due process principles permit the exercise of personal jurisdiction over these Defendants. *See Schwarzenegger*, 374 F.3d at 801.

For due process to be satisfied, a defendant, if not present in the forum, must have "minimum contacts" with the forum state such that the assertion of jurisdiction "does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Under the Ninth Circuit's three-part inquiry, the "minimum contacts" test is satisfied when:

> (1) the defendant has performed some act or consummated some transaction within the forum or otherwise purposefully availed himself of the privileges of conducting activities in the forum, (2) the claim arises out of or results from the defendant's forum-related activities, and (3) the exercise of jurisdiction is reasonable.

*Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000).

Plaintiff's claims are based on the Policy provided by GEICO Indemnity, and the quote for a new policy with GEICO Casualty. The Policy clearly identifies that the company at issue is GEICO Indemnity, and the offer specifically states it is from GEICO Casualty. There are no allegations regarding any acts by the other Defendants that would create a basis of jurisdiction for this action. Nor has Plaintiff come forth with any evidence to support the court's

exercise of general jurisdiction over these Defendants.  *See Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163, 1171 (9th Cir. 2006) (discussing scenarios where the requisite showing of "substantial" or "continuous and systematic" contacts necessary for general jurisdiction have been made); *Kransco Mfg. v. Markwitz*, 656 F.2d 1376, 1378 (9th Cir. 1981) (noting that plaintiff has the burden of providing whether general or specific jurisdiction exists).  Further, during the hearing, Plaintiff conceded that he was aware of no facts that would support personal jurisdiction over these Defendants, and did not object to their dismissal at this time.  The court therefore DISMISSES GEICO General Insurance Company, Government Employees Insurance Company, Berkshire Hathaway, Inc. Warren E. Buffet, and Olza M. "Tony" Nicely from this action for lack of personal jurisdiction.[2]

**B.    Defendants' Rule 12(b)(6) Motion**

   *1.    Unjust Enrichment*

Defendants argue that Plaintiff has failed to state an unjust enrichment claim because Plaintiff never paid a higher premium.  Defs.' Mot. 22.

---

[2] Defendants had also argued that Plaintiff failed to properly serve Defendants, but at the hearing agreed that the remaining Defendants -- GEICO Indemnity and GEICO Casualty -- were properly served.  Consequently, the court does not address Defendants' Rule 12(b)(4) argument.  Below, the court addresses Defendants' remaining arguments as they apply to GEICO Indemnity and GEICO Casualty only, and refers to them as "Defendants."

The elements of an unjust enrichment claim are the "(a) receipt of a benefit without adequate legal basis by Defendants; and (b) unjust retention of that benefit at the expense of Plaintiff[]." *Porter v. Hu*, 116 Haw. 42, 53, 169 P.3d 994, 1005 (2007) (*citing Small v. Badenhop*, 67 Haw. 626, 636, 701 P.2d 647, 654 (1985)). The Complaint alleges neither of these elements; indeed, Plaintiff did not renew his insurance contract. The court therefore GRANTS Defendants' Motion to Dismiss Plaintiff's unjust enrichment claim.

### 2. *False Advertising*

Defendants argue that this claim must fail because there is no tort of false advertising under Hawaii law. Defs.' Mot. 22 (*citing Zanakis-Pico v. Cutter Dodge, Inc*., 98 Haw. 309, 320 n.21, 47 P.3d 1222, 1233 n.21 (2002) ("There is no tort of 'false advertising' under Hawai'i law, and we decline to establish one in this appeal.")). Because Defendants are correct on the law, the court GRANTS Defendants' Motion to Dismiss Plaintiff's false advertising claim.

### 3. *Remaining Claims*

Defendants argue that Plaintiff's claims are all based on an improper insurance increase, and should be dismissed because this increase was properly calculated pursuant to the State Approved Rating Plan. Defs.' Mot. 11-22. To support this argument, Defendants submitted affidavits describing how GEICO

Indemnity determined the new premium, and exhibits showing the State of Hawaii, Insurance Division's confirmation that the premium was properly calculated.  By submitting evidence, Defendants effectively ask the court to convert their Motion to Dismiss into one for summary judgment.  The court declines this invitation.

Pursuant to Federal Rule of Civil Procedure 12(c), "[i]f, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.  *All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion*." (emphasis added).  Where the non-movant is proceeding pro se, the court, if it sua sponte converts a motion to dismiss, must advise the non-movant of its intention to convert and ensure that he is "provided with proper notice regarding the complex procedural issues involved in summary judgment proceedings."  *Garaux v. Pulley*, 739 F.2d 437, 439-40 (9th Cir. 1984).

The court finds that it would be fundamentally unfair to Plaintiff for the court to convert Defendants' Motion to Dismiss into one for summary judgment at this time.  Plaintiff, proceeding pro se, was not given notice that the motion could be viewed as one for summary judgment, notified that he could

submit evidence, or afforded any time for discovery to rebut the evidence presented by Defendants.[3]  Further, a proper motion for summary judgment would include a concise statement of material facts, which would clearly identify for Plaintiff (and the court) the facts Plaintiff must rebut.  The court therefore DENIES Defendants' Motion to Dismiss the remaining claims without prejudice to Defendants to later raise these arguments in a motion for summary judgment.

## V. **CONCLUSION**

For the reasons discussed above, the court GRANTS in part and DENIES in part Defendant's Motion to Dismiss.  As a result of this Order, Counts I, III, V, VI, and VII against GEICO Indemnity and GEICO Casualty remain.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, June 30, 2008.



/s/ J. Michael Seabright
J. Michael Seabright
United States District Judge

*Young v. GEICO Indemnity Co., et al.*, Civ. No. 08-00171 JMS/KSC, Order Granting in Part and Denying in Part Defendants' Motion to Dismiss

---

[3] Indeed, in his Opposition, Plaintiff argues that discovery is needed regarding whether the premium increase is in accordance with Hawaii Insurance Code Rules, and whether David's traffic violations were known to Defendants.  Pl.'s Opp'n 9-10.